NOT FOR PUBLICATION (Doc. No. 8)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| ROBERT F. McHALE and DELILAH A. McHALE, | : : : : | |
| Plaintiffs, | : : | Civil No. 11-143 (RBK/KMW) |
| v. | : : | **OPINION** |
| RALPH J. KELLY, | : : | |
| Defendant. | : : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Ralph J. Kelly ("Defendant") to dismiss the amended complaint of pro se plaintiffs Robert F. McHale and Delilah A. McHale ("Plaintiffs") for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). In their amended complaint, Plaintiffs allege that Defendant, their former attorney, mistakenly advised them to proceed with an uninsured motorist claim and arbitration in conjunction with their personal injury litigation. Plaintiffs claim that this error violated the New Jersey Consumer Fraud Act ("CFA") and constituted legal malpractice. Defendant responds that the CFA is inapplicable to attorneys and that, accordingly, Plaintiffs cannot make out a claim under that statute. Moreover, regarding the legal malpractice claim, Defendant argues that the Pennsylvania or New York—not New Jersey—statute of limitations should govern, and that the statute of limitations for Plaintiffs' claims has expired. The Court finds that Pennsylvania's statute of limitations governs Plaintiffs' claim of legal malpractice, and that Plaintiffs' claim is therefore time barred.

**I.     BACKGROUND**

On July 12, 1999, Plaintiff Robert McHale was injured in a motor vehicle accident that occurred during the scope of his employment by United Refrigeration, Inc. Def. Br. Mot. to Dismiss, Ex. E 3-4. On July 11, 2001, Robert McHale sued Michael K. Anthony, the driver of the truck who hit him, for negligence, and also sued Anthony's employer and the company from whom Anthony's employer had rented the truck. Id., Ex. E. In a second cause of action, Delilah McHale, Robert McHale's wife, asserted a claim for loss of consortium. Id., Ex. E at 8-9. The McHales were represented by Defendant Kelly in that New York state action. Id., Ex. E at 10.

Before judgment was rendered in that 2001 personal injury action, those defendants and their insurers declared bankruptcy. Pls. Am. Compl. at ¶ 7; Def. Br. Mot. to Dismiss 6. It is undisputed that, on the advice of their attorney (Defendant), Plaintiffs pursued an uninsured motorist claim against Liberty Mutual Insurance Company, the insurer of Plaintiff R. McHale's former employer. Id. This claim arose from two separate policies with Liberty Mutual—the Plaintiffs' personal automobile insurance policy, and the policy issued to United Refrigeration. Id. Plaintiffs claim that they were "adamantly against" bringing claims against United Refrigeration, Inc., and sued the company's insurer only because "Mr. Kelly insisted that it was what is done under the circumstance." Pls. Am. Compl. at ¶ 10. Defendant, on the other hand, underscores that Plaintiffs "agreed to" the settlement of the uninsured motorist claim. Def. Br. Mot. to Dismiss 1. Those claims were settled on May 10, 2004 for $725,000.00 in a Settlement Agreement governed by Pennsylvania law. Id.

Plaintiffs allege that, "[d]uring the signing of the settlement agreement in Ralph J. Kelly's office, Plaintiffs became aware that Mr. Kelly misrepresented his capacity to handle Plaintiff['s] . . . workman's compensation case which was included as part of the litigation."

2

Pls. Am. Compl. at ¶ 13.  Moreover, they allege that they met with another New York attorney, Joseph Gulino ("Gulino"), concerning a subrogation matter pursued by Liberty Mutual related to the uninsured motorist claim.  Id. at ¶ 15.  At that meeting, they allege, Mr. Gulino told Plaintiffs that Defendant had erroneously advised them to sue Liberty Mutual, since "suing both policies . . . only prorated the award" Plaintiffs could receive; it did not increase the potential amount of the reward.  Id. at ¶¶ 17-18.

Plaintiffs allege that they did not know of this alleged error by Defendant at the time of their settlement conference with Liberty Mutual.  Id. at ¶17.  As proof of their lack of knowledge of Defendant's alleged error, Plaintiffs cite the fact that, on August 12, 2004, they signed a document releasing Defendant from claims, injuries, or damages relating to his representation of Plaintiffs.  Id.; Id., Ex. 5, "Full and Final Release."  Plaintiffs allege that the meeting with Mr. Gulino, where they claim they first learned of Defendant's error, occurred on November 8, 2006.

Plaintiffs indicate that Defendant "lied to Plaintiffs in stating that suing United Refrigeration was a mandatory part of the case."  Pls. Br. in Opposition to Mot. to Dismiss 6.  Therefore, Plaintiffs contend, they had no choice but to settle on the policies with Liberty Mutual, rather than "wait for the New York case," where they would have received a settlement of "more than double the amount available" from the uninsured motorist claims.  Id.  Plaintiffs also allege that, because Defendant mistakenly pursued the uninsured motorist claims, Plaintiffs could only retain 40% of Plaintiff Robert Kelly's workman's compensation medical coverage.[1]

Plaintiffs further allege, as a second cause of action, that Defendant erred by naming the incorrect Ryder Truck company as a defendant in their New York personal injury action.

---

[1] The Court notes that, on August 12, 2004, Plaintiffs signed a Release and Settlement releasing Defendant from known and unknown injuries and losses arising from Defendant's representation of Plaintiffs.  Pls. Affidavit in Support of Opposition to Mot. to Dismiss, Ex. 4.  According to Plaintiffs, that Release was intended to cover Defendant's alleged error with regard to Plaintiffs' workman's compensation claim.  Id., Ex. 9 at 3.

3

However, the New York Appellate Division held that Plaintiffs' claim against Empire Beef Company was not barred by the Pennsylvania uninsured motorist arbitration and could therefore proceed. McHale v. Anthony, 70 A.D.3d 466, 895 N.Y.S.2d 47 (2010) ("We reject Empire's argument that the McHales' election of arbitration to resolve their claim for uninsured motorist benefits as against their insurer, Liberty, and the ultimate settlement of that claim, preclude their maintenance of this action against the alleged tortfeasors.").[2]  Furthermore, Plaintiffs allege that "Empire Beef, the company that rented the truck [that struck Plaintiff Robert McHale], [has] liability insurance policy coverage in the amount of $1,000,000.00." Pls. Am. Compl. at ¶ 28(ii). Therefore, Defendant's error in serving the incorrect party did not result in the injury that Plaintiffs allege—that is, the loss of their million-dollar New York action.

Plaintiffs filed suit in this Court on January 10, 2011.

## II.   STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the court must

---

[2] The Ryder defendant from the New York action was dismissed for improper service of process by the Appellate Division. McHale v. Anthony, 70 A.D.3d 463, 895 N.Y.S.2d 367 (2010); aff'd McHale v. Anthony, 15. N.Y.3d 710, 909 N.Y.S.2d 694 (2010).

separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

### III.    PLAINTIFFS' CFA CLAIM[3]

Plaintiffs first allege that Defendant has committed consumer fraud by failing to disclose to Plaintiffs, his clients, information "concerning [his] services which was known at the time of services" and was "intended to induce the client into entering into a transaction" the client would otherwise not have entered into. Pls. Am. Compl. at ¶ 20. The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1.1 et., applies to sales of merchandise, which is defined as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1. Although services are within the reach of the Consumer Fraud Act, the New Jersey courts have made an exception to the CFA for services rendered by learned professionals. Lee v. First Union Nat. Bank, 199 N.J. 251, 263 (2009) (citing Neveroski v. Blair, 141 N.J.Super. 365, 379 (App. Div. 1976)). Specifically, New Jersey courts have found that attorneys' services fall within the learned professional exception, and, therefore, are not "merchandise" for the purposes of the statute. Vort v. Hollander, 257 N.J.Super. 56, 62 (App. Div. 1992), cert. denied 130 N.J. 599 (1992). Plaintiffs therefore have failed to state a claim under the CFA against Defendant, their former attorney.

---

[3] Plaintiffs also refer to their CFA claim as a cause of action for "attorney fraud." Pls. Am. Compl. at ¶ 25 (quoting the definition of "fraud" contained in the CFA).

## IV.    PLAINTIFFS' LEGAL MALPRACTICE CLAIM[4]

Plaintiffs also raise a claim of legal malpractice against Defendant.  In order to determine whether or not this claim may proceed, the Court must first find that the statute of limitations governing this matter has not expired.  This case presents contacts in the states of Pennsylvania, New Jersey, and New York.  In determining which state's statute of limitations to apply, "the first step is to determine whether an actual conflict exists" between the law of the different states. P.V. ex rel T.V. v. Camp Jaycee, 197 N.J. 132, 143 (2008).  If there is such a conflict, as there is in this case, the Court must then perform the appropriate choice-of-law analysis to determine which state's statute of limitations will apply.[5]  The Court finds that the Pennsylvania statute of limitations applies in this case.  The New Jersey statute of limitations—the only statute of limitations at issue in this case that would prevent Plaintiffs' claims from being time barred—does not apply.

### A. Relevant Statutes of Limitations

In Pennsylvania, the statute of limitations for tortious conduct—including legal malpractice—is two years.  Knopick v. Connelly, 639 F.3d 600, 606 (3d Cir. 2011) (citing 42 Pa. C.S.A. § 5524).  In New Jersey, the statute of limitations for legal malpractice is six years. N.J.S.A. § 2A:14-1; see also Vastano v. Algeier, 178 N.J. 230, 236 (2003) (holding that "a legal malpractice action [must] commence within six years from the accrual of the cause of action"). In New York, the statute of limitations for legal malpractice claims is three years.  Shumsky v. Eisenstein, 96 N.Y.2d 164, 166 (2001).

---

[4] Plaintiffs allude to a claim in "negligence" as well as legal malpractice.  However, as Plaintiffs consistently allege only that Defendant was negligent with respect to his duty as their attorney, the Court considers only Plaintiffs' allegations of legal malpractice, which appears to be the more precise expression of the same claim.

[5] Because the Court finds, as indicated in Section I supra, that Plaintiffs did not suffer injury based on Defendant's naming the incorrect Ryder company in their New York personal injury action, that claim necessarily fails and the Court accordingly does not address the statute of limitations with respect to that alleged cause of action.

**B. Date of Accrual**

Statutes of limitations are said to begin running on the date that the statutory period accrues. The date of accrual may depend upon different factors, and may differ from state to state. The relevant dates of accrual for each state's statutory period are indicated below.

(1) Pennsylvania

In Pennsylvania, the accrual period for a legal malpractice action is triggered by the occurrence of a breach of duty. Knopick v. Connelly, 639 F.3d 600, 607 (3d Cir. 2011) (explaining that, under the "occurrence rule, the statutory period commences upon the happening of the alleged breach of duty" (internal citations omitted)). However, "[w]here a plaintiff could not reasonably have discovered his injury or cause" within the statutory period, Pennsylvania courts invoke the discovery rule, tolling the statute of limitations until "the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and its cause." Id.[6]

Plaintiffs, represented by Defendant settled their uninsured motorist claims with Liberty Mutual on May 10, 2004. Def. Br. Mot. to Dismiss, Ex. O. Plaintiffs claim that Defendant's malpractice arises out of his erroneous advice that Plaintiffs enter into that settlement; therefore, the "occurrence" of Defendant's alleged malpractice must have taken place on or before the date of the settlement agreement. However, as Defendant concedes, the statute of limitations would not have begun to accrue until Plaintiffs could have known of their alleged injury and its cause. Def. Br. Mot. to Dismiss, 22. Plaintiffs allege that, on November 8, 2006, they met with Joseph Gulino, who "told [them] that Mr. Kelly had made the mistake of suing Liberty Mutual

---

[6] Plaintiffs may also be alleging that Defendant fraudulently concealed his malpractice, (since they allege he knew of his error, but didn't tell them). To the extent that Plaintiffs have raised fraudulent concealment as an issue, the statute of limitations was also tolled. Knopick v. Connelly, 639 F.3d 600, 607 (3d Cir. 2011) (finding that "[f]raudulent concealment would also toll the start of the statute of limitations on [a plaintiff's] malpractice claim until he reasonably should have been aware of his injury and its cause"). The date for accrual of the statute of limitations would also be November 8, 2006.

7

Insurance Company . . . due to the extensive insurance coverage available in New York after the bankruptcy was lifted." Pls. Am. Compl. at ¶ 16.  Therefore, under Pennsylvania law, the date of accrual of the statute of limitations is November 8, 2006.[7]

Plaintiffs argue that, because Gulino did not specifically "sa[y] the words 'malpractice,' 'fraud,' or anything of that manner," Plaintiffs did not know that Defendant's acts might amount to legal malpractice.  Letter from Delilah McHale, Plaintiff, to Hon. Robert B. Kugler (Sept. 12, 2011).  Instead Plaintiffs only assumed that Defendant's alleged error was "just another of Mr. Kelly's mistakes . . . ." Id.  However, there appears to be no legal basis for Plaintiffs' proposition that the discovery rule tolls the statute of limitations until a plaintiff happens to learn that his injury might substantiate a claim for relief.  The discovery rule tolls the statutory period only until "the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and its cause." Knopick, 639 F.3d at 607.  The Third Circuit has held, based on its analysis of Pennsylvania state case law, that "reasonable diligence" is triggered where there has been "some reason to awaken inquiry and direct diligence in the channel in which it would be successful." Urland v. Merrell-Dow Pharmaceuticals, Inc., 822 F.2d 1268, 1273 (3d Cir. 1987) (citations omitted).  In this case, even construing Plaintiffs' pleadings liberally,[8] it clear that Plaintiffs articulate that Mr. Gulino's statements provided just such a "reason to awake inquiry."

---

[7] Plaintiffs' Affidavit in Support of Opposition to Motion to Dismiss underscores that November 8, 2006 is the proper date of accrual: "Let me point out that we found out about the Liberty Mutual mistake from Mr. Joseph Gulino on November 8, 2006. . . . Mr. Gulino told us that Ralph should have never sued Liberty Mutual and that a claims examiner accepted the case by mistake.  We also found out that Ralph's mistake of suing Liberty Mutual was because he sued under 'uninsured' . . . ." Ex. 9 at 3-4.

[8] In determining the sufficiency of a pro se complaint, the Court must construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

See Pls. Am. Compl. at ¶ 16 (alleging that "on November 8, 2006, Mr. Gulino told Plaintiffs that Mr. Kelly had made the mistake . . .").

(2) New Jersey

The rule governing accrual of the New Jersey statutory period is the same as in Pennsylvania. "[T]he statute of limitations does not commence until the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim" (internal citations omitted)). Vastano v. Algeier, 178 N.J. 230, 236. New Jersey courts have found that the discovery rule ceased to toll the statutory period when a legal malpractice plaintiff "clearly knew or should have known that he was harmed by his attorney's negligent advice." Id. at 237. Because New Jersey law stresses that the discovery period ends when a plaintiff discovers the facts—not the law—essential to the malpractice claim, Plaintiffs' argument that they were unaware until 2010 that Defendant's error constituted malpractice is also unavailing under New Jersey law. Thus, in the case at bar, the statutory period under New Jersey law also accrued on November 8, 2006.

(3) New York

New York law, on the other hand, does not recognize a discovery rule for legal malpractice claims, and holds that such claims accrue at the time that the malpractice is committed. Shumsky v. Eisenstein, 96 N.Y.2d 164, 166 (2001). In this case, therefore, the accrual date under New York law must have been on or before the Plaintiffs, represented by Defendant, signed the settlement agreement with Liberty Mutual and United Refrigeration. That is, the statute of limitations had begun to run, at the latest, on May 10, 2004.

Plaintiffs claim that their case invokes the "continuous representation" doctrine applied by New York courts in certain circumstances, and that the accrual date is therefore later than the

9

occurrence date.  Id.  Under New York law, when a potential litigant's professional relationship to his or her attorney is ongoing, the continuous representation doctrine tolls "the Statute of Limitations on [a] malpractice claim until the ongoing representation is completed."  Id. at 167-68.  In order to invoke the continuous representation doctrine, a plaintiff must demonstrate: "(1) ongoing representation in connection with the specific matter from which the malpractice arose and (2) clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney."  Icahn v. Todtman, Nachamie, Spizz & Johns, P.C., 2001 WL 1160582 at *3 (S.D.N.Y. Oct. 1, 2001).  Plaintiffs argue that the continuous representation doctrine applies here because Gulino sent letters to Defendant in 2005 that concerned the division of the award between Plaintiffs, Defendant, and Gulino's firm.  Letters from Joseph Gulino to Ralph J. Kelly, June 6, 2005 and September 20, 2005.  However, although the letters indicate that Defendant spoke with Gulino as late as September 2005, those conversations concerned the fee-splitting arrangement governing the settlement of the New York personal injury action (not the Liberty Mutual uninsured motorist claims, which had already been settled).  It appears that, by this point, Gulino had taken over the New York action for Defendant.  Thus the letters do not reflect a "developing" relationship between Plaintiffs and Defendant, as invocation of the continuous representation doctrine demands under New York law.  In fact, the letters from Gulino support the proposition that the relationship between Plaintiffs and Defendant was terminating, since Gulino was beginning to appear for Plaintiffs' in their New York action.  Even as they allege that "Mr. Gulino was hired in partnership by Mr. Kelly and not by [Plaintiffs]," it is clear that Defendant disappears from the picture soon after Gulino enters it.  Letter from Delilah McHale, Plaintiff to Hon. Robert B. Kugler, Sept. 20, 2011.[9]

---

[9] In support of their argument that the continuous representation doctrine continues to toll the statute of limitations, Plaintiffs also cite a letter from Defendant dated February 17, 2010.  Letter from Defendant, Ralph J. Kelly, to

Furthermore, under the continuous representation doctrine, "[t]he tolling ceases once a client loses trust and confidence in the attorney," because the client becomes able "to question and assess the techniques employed or the manner in which the services are rendered . . . ." Icahn, 2001 WL 1160582 at *3 (internal citations omitted). Thus, although it is unlikely that the continuous representation doctrine is implicated at all in this case, it is clear that any tolling resulting from activation of the continuous representation doctrine would have ceased on November 8, 2006, when the Plaintiffs were told by Gulino of Defendant's alleged errors. On that date, Plaintiffs certainly were in a position to question Defendant and assess his techniques, and their allegations suggest that they did so.

**C. The Action Is Time Barred, as the New Jersey Statute of Limitations Does Not Apply**

Plaintiffs filed suit in this Court on January 10, 2011. As the above summary indicates, the statute of limitations for a legal malpractice claim under Pennsylvania law accrued on November 8, 2006, and therefore expired two years later—on November 8, 2008. The statute of limitations for a claim under New Jersey law also accrued on November 8, 2006, and will therefore expire six years later—on November 8, 2012. Under New York law, the statute of limitation began to run on May 10, 2004 (if not before), and thus expired on May 10, 2007 at the latest. Because Plaintiffs' claims are time barred under Pennsylvania and New York law, but not under New Jersey law, there is an actual conflict.

---

Plaintiff, Delilah McHale, February 17, 2010. That letter merely manifests Defendant's compliance with Plaintiffs' request that he forward a copy of their Settlement Agreement and Release; it does not reflect a continuous relationship as contemplated by the New York doctrine. Plaintiffs suggest that the fact that Defendant continued to have access to the Settlement Agreement and Release in their case is evidence of their continuous relationship with him. Letter from Plaintiff, Delilah McHale, to Hon. Robert B. Kugler, Aug. 27, 2011. However, an attorney's access to a client's files is far below the level of contact necessary for continuous representation to be established under New York law. See Luk Lamellen U. Kupplungbau GmbH v. Lerner, 166 A.D.2d 505, 507 (N.Y. App. Div. 1990) (holding that the continuous representation doctrine requires "continuing trust and confidence in the relationship between the parties"—that is, between the attorney and client).

(1) <u>New Jersey's Choice-of-Law Rules Apply</u>

Defendant properly raises the question of which law should govern the Court's analysis. Because the Court hears this case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, it must apply state substantive law to Plaintiffs' claims. <u>See</u> <u>Gasperini v. Ctr. for Humanities</u>, 518 U.S. 415, 427 (1996) ("Under the <u>Erie</u> doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

Here, Defendant argues that Plaintiffs' claims are time barred, and therefore should be dismissed. As explained above, the statute of limitations question in this case will establish whether Plaintiffs are eligible for recovery at all, making the issue outcome-determinative, and therefore substantive. <u>Guaranty Trust Co. v. York</u>, 326 U.S. 99, 110 (1945). The Court must apply state substantive law. <u>Id.</u> (finding that where the "consequences" of an issue "so intimately affect recovery or non-recovery," a federal court sitting in diversity must apply state substantive law).

This case further raises the question of which state's substantive law should be applied. Federal courts sitting in diversity "determine which state's substantive law applies by applying the choice-of-law rules of the jurisdiction in which the court sits." <u>Garcia v. Plaza Oldsmobile LTD.</u>, 421 F.3d 216, 219 (3d Cir. 2005) (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941)). Therefore, the Court in this case must apply the choice of law rule of New Jersey to decide which state's statute of limitations to apply to Plaintiffs' claims.

(2) <u>Choice-of-Law Analysis</u>

New Jersey applies the "most significant relationship" test set out in the <u>Restatement (Second) of the Conflict of Laws</u>. <u>P.V. ex rel. T.V. v. Camp Jaycee</u>, 962 A.2d 453 (N.J. 2008). The most significant relationship test is founded on the principle that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ." <u>Rest. (Second) of Conflict of Laws</u> § 145(1) (1969). In determining which state has the most significant relationship to this dispute, the Court must weigh the contacts listed in section 145 of the Second Restatement. Specifically, the court must consider: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. <u>P.V.</u>, 962 A.2d at 458 (citing <u>Rest. (Second) of Conflict of Laws</u> § 145(2)(a)-(d)).

(a) Place of Injury and Place Where Conduct Causing the Injury Occurred

Plaintiffs allege that, because Defendant mistakenly pursued the uninsured motorist claims, Plaintiffs could only retain 40% of Plaintiff Robert Kelly's workman's compensation medical coverage. The Settlement Agreement between Liberty Mutual and Plaintiffs, which was negotiated by Defendant pursuant to Plaintiffs' uninsured motorist claims, is governed by Pennsylvania law. <u>See</u> Def. Br. Mot. to Dismiss, Ex. O at ¶ 14 (stating that the "Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Pennsylvania"). Moreover, the United Refrigeration policy with Liberty Mutual—from which the majority of the settlement is derived—was issued in Pennsylvania. Def. Br. Mot. to Dismiss 24. A small part of the uninsured motorist settlement is derived from Plaintiffs' personal policy

with Liberty Mutual, which was issued to Plaintiffs in New Jersey, Id. at 23-24; however, the Settlement Agreement with Liberty Mutual covered "all claims for uninsured motorist benefits arising out of the July 12, 1999 motor vehicle accident." Id., Ex. O at ¶ F.  Furthermore, Defendant represented Plaintiffs through the Pennsylvania law firm where Defendant was employed at that time (Abrahams, Loewenstein & Bushman).  Therefore, insofar as Plaintiffs incurred injury due to the settlement of the uninsured motorist claims by Defendant, that injury took place in Pennsylvania, as did the conduct that caused the injury.

> (b) The Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties

Plaintiffs are domiciled in New Jersey.  Pls. Am. Compl. at ¶ 1.  Defendant is domiciled in Pennsylvania, and both Defendant's current employer and his employer at the time that he represented Plaintiffs are located in Pennsylvania.  United Refrigeration, Inc., Plaintiff Robert McHale's former employer, who was a party to the Settlement Agreement with Liberty Mutual, is a Pennsylvania corporation located in Pennsylvania.  Def. Br. Mot. to Dismiss, Ex. I.

> (c) Place Where the Relationship Between the Parties Is Centered

Plaintiffs bring suit against Defendant for legal malpractice in conjunction with his work at a Pennsylvania law firm.  Moreover, according to Plaintiffs' own allegations, their injury arises from the Settlement Agreement Defendant negotiated in Pennsylvania, which is governed by Pennsylvania law.  To the extent that Plaintiffs claim that their success in the New York action was negatively affected by Defendant's alleged error with the Settlement Agreement in Pennsylvania, that New York injury nevertheless stems from events that took place in Pennsylvania, and therefore is centered in Pennsylvania.

By contrast, the only contacts with New Jersey are Plaintiffs' domicile, and the fact that a small part of Plaintiffs' Settlement Agreement with Liberty Mutual comes from Plaintiffs' personal New Jersey policy.  All other contacts in this case—all underlying events and litigation, and the Defendant himself—are based in either Pennsylvania or New York, and they are centered in Pennsylvania.  The Third Circuit has found that, where a plaintiff's domicile and defendant's bar admission were the only contacts in New Jersey, New Jersey did not have the most significant relationship to the action under Section 145 of the Restatement (Second) of Conflicts of Law.  O'Boyle v. Braverman, 337 Fed. Appx. 162, 167 (3d Cir. 2009.  This case is identical, save for the additional contact with New Jersey—Plaintiffs' personal uninsured motorist policy with Liberty Mutual.  Because, as explained above, the New Jersey policy was settled with the understanding that Pennsylvania law would govern, that additional contact has little impact on the Section 145 analysis here.  Therefore, New Jersey law cannot be said to govern in this case, and, after analysis of the Section 145 factors, Pennsylvania is found to be the state with the most significant relationship to this case.

      (3) Consideration of Section 6 Factors

Finally, because the New Jersey conflict-of-laws analysis is qualitative, and not merely quantitative, the Court must assess the identified contacts in light of the principles articulated in Section 6 of the Second Restatement.  P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 147 (N.J. 2008).  New Jersey courts hold that "the principles of section 6 . . . measure the significance of [the] contacts" identified in a court's Section 145 analysis.  Id.  "In other words," according to the New Jersey Supreme Court, we must ask whether "the section 6 considerations gin up or diminish the values to be ascribed to the contacts relative to the issue presented."  Id.

Section 6 requires consideration of several factors,[10] whose primary purpose is to account for the different policies underlying conflicting state laws. In this case, the Section 6 considerations do not change the Court's Section 145 analysis, and therefore reinforce the finding that Pennsylvania's statute of limitations should be applied. Specifically, in Pennsylvania, the "purpose of any statute of limitations is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims." McCreesh v. City of Philadelphia, 585 Pa. 211, 222 (Pa. 2005) (quoting Insurance Co. of N. Amer. v. Carnahan, 446 Pa. 48, 284 A.2d 728, 729 (Pa. 1971). Under New York and New Jersey law, the policy considerations underlying statutes of limitations are virtually identical to the Pennsylvania policies. See Rivera v. Prudential Property & Casualty Ins. Co., 104 N.J. 32, 39 (1986) (finding that statutes of limitations serve to "stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims, and . . . [to] serve as a measure of repose" for potential Defendants); Depczynski v. Adsco/Farrar & Trefts, 84 N.Y. 2d 593, 596-97 (1994) (finding that statutes of limitations balance "competing concerns of plaintiffs being afforded a reasonable time to bring their claims and defendants in not having to resist stale claims"). Therefore, Section 6(c) is satisfied.

---

[10] Specifically, Section 6 asks courts to consider the following factors:
    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.
Rest. (Second) of Conflicts of Law, § 6(2).

Moreover, applying the Pennsylvania statute of limitations for legal malpractice protects the justified expectations of Defendant, who has elected to practice law in Pennsylvania. Therefore, Section 6(d) is satisfied by application of Pennsylvania law as well.  Finally, as Defendant points out, Pennsylvania (like New Jersey and New York) has a "keen interest" in the regulation of attorney conduct; the Pennsylvania Supreme Court has emphasized its "inherent and exclusive power to supervise the practice of law in our Commonwealth and the conduct of attorneys who are its officers."  Office of Disciplinary Counsel v. Marcone, 579 Pa. 1, 5 at n.3 (2004) (citing Pa. Const. art. V, § 10(c)).  Thus Section 6(e), which requires that the choice of state law acknowledge the basic policies underlying a given field of law (here, legal malpractice), is satisfied when Pennsylvania law is required.

The Court therefore finds that Plaintiffs' legal malpractice action is barred because the two-year Pennsylvania statute of limitations for such claims, which began to run on the accrual date of November 8, 2006, has expired.[11]

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for failure to state a claim on which relief can be granted is hereby **GRANTED**.  An accompanying Order shall issue today.

Date:  10/14/2011                                                                    /s/ Robert B. Kugler
                                                                                 ROBERT B. KUGLER
                                                                                  United States District Judge

---

[11] The Court acknowledges Plaintiffs' dismay that although they "had 2 attorneys handling [their] case, supposedly 2 attorneys looking out for [their] best interest, yet the Defendant wants to say that [Plaintiffs] are responsible to know if [they] are being taken advantage of."  Letter from Delilah McHale, Plaintiff, to Hon. Robert B. Kugler, Sept. 12, 2011.  It is precisely this difficulty that the discovery rule and continuous representation doctrine are intended to address.  However, this Court and its litigants must acknowledge the important role played in our legal system by statutes of limitations—that is, ensuring that claims are not litigated years after any reliable discovery could be had, and relieving individuals from the fear of litigation after a reasonable period of time.  These important functions must be balanced against a state's need to afford potential plaintiffs a forum in which to seek relief for their alleged injuries.  As the preceding analysis illustrates, each state locates that balance at a different point, and it is this Court's duty to honor such decisions when our jurisdiction requires the exercise of state substantive law (as here).